478 So.2d 967 (1985)
Darlene English, Wife of/and Andrew MIMS
v.
STATE FARM INSURANCE CO., and George Glover, Sr., Individually, and as Administrator of the Estate of His Minor Child George Glover, Jr.
No. 85-CA-12.
Court of Appeal of Louisiana, Fifth Circuit.
November 12, 1985.
Rehearing Denied December 17, 1985.
*968 Robert N. Clarke, Metairie, for plaintiffs-appellants.
David M. Cambre, New Orleans, for defendants-appellees.
E. Ross Buckley, Jr., Blue, Williams and Buckley, Metairie, for defendant-appellee.
Before KLIEBERT, CURRAULT and DUFRESNE, JJ.
CURRAULT, Judge.
This appeal originates in the Twenty-Fourth Judicial District Court, Division "D", Parish of Jefferson, wherein the Honorable Walter E. Kollin rendered judgment in favor of defendants dismissing plaintiffs' claims pursuant to a jury's finding of no negligence on the part of any defendant. We affirm.
On July 20, 1981, Mrs. Gerald Skaggs went for a job interview accompanied by her neighbor and friend, Mrs. Darlene Mims. Before leaving, Mrs. Skaggs asked her father-in-law, Mr. Sterling Skaggs, to watch her son, Matthew Skaggs, while she was gone. Mrs. Mims allowed her two daughters, Michelle and Andrea, to go to the Skaggs's home located at 3709 Tulane Drive, Kenner, Louisiana, to play with Matthew while Mr. Mims remained at home repairing his truck. Mrs. Mims did not speak to Sterling Skaggs regarding the supervision of her children in her absence.
The children were playing in Matthew's room when they were joined by a fourth child, George Glover, Jr. During the course of their playing, a scuffle of sorts ensued resulting in Michelle Mims being struck in the eye by a thimble, a Monopoly gamepiece, thrown by George Glover, Jr.
As a consequence of that injury, Michelle's parents filed suit against George Glover, Sr., the father of George Glover, Jr., individually and as the administrator of his son's estate; Mr. and Mrs. Gerald Skaggs, at whose house the accident occurred; Sterling Skaggs, the father of Gerald Skaggs who was in the front room of his son's house at the time of the accident; South Carolina Insurance Company and State Farm Fire and Casualty Company, the homeowners' insurers of Mr. and Mrs. Gerald Skaggs. Prior to trial defendant, George Glover, Sr., was individually discharged *969 in bankruptcy but was maintained as administrator of his son's estate.
Pursuant to a jury's finding of no negligence on the part of any named defendant, the trial court rendered judgment dismissing plaintiffs' claims. Plaintiffs then filed a motion for new trial which was denied March 19, 1984.
Plaintiffs-appellants now bring this appeal asserting as error the following:
that (1) the trial court erred in dismissing over objection the alleged homeowner insurance companies, South Carolina Insurance Company and State Farm Insurance Company; that
(2) the trial court erred in excluding a rental dwelling policy obtained by Gerald Skaggs following the accident of July 20, 1981, duly proffered by appellants' counsel; and that
(3) the trial court erred in the submission of its special verdict forms, interrogatories and instructions, and further, in its denial of new trial solely on that basis.
Appellants claim that Sterling Skaggs was an insured under both of his son's homeowners' policies.
Gerald Skaggs owned two properties: 3709 Tulane Drive, Kenner, Louisiana; and 145 Daffodil Lane, Waggaman, Louisiana. State Farm insured the Kenner residence where the accident occurred, and South Carolina Insurance Company insured the house located in Waggaman.
Gerald Skaggs originally lived in Waggaman, but later purchased and moved into the Kenner home. Mr. and Mrs. Sterling Skaggs then rented the Waggaman home from their son when he was not able to sell it. Mr. and Mrs. Sterling Skaggs established their residency in Waggaman keeping all their belongings there and began paying their son rent.
On July 12, 1981, Mrs. Sterling Skaggs was hospitalized. While she was in the hospital, her husband, Sterling, testified he stayed at his home in Waggaman but spent some of his time at his son Gerald's house, either washing his clothes or eating a meal. Occasionally he would spend the night at Gerald's during his wife's hospitalization, but continuously maintained his separate residence. After her release from the hospital, Sterling and Mrs. Skaggs resumed living in their home in Waggaman.
Gerald Skaggs confirmed his father's testimony that, while his mother was in the hospital, his dad visited two or three times a week and "occasionally" would spend the night. However, Gerald stated he did not consider his father a resident of his household and further testified that his father did not move in with him during this time.
The testimony of Sterling and Gerald Skaggs was further corroborated by Mrs. Gerald Skaggs who testified that, while Sterling's wife was in the hospital, he would come and go and that they would feed him and wash his clothes, but he would go back to his own home. She further stated Sterling would sleep at their home "off and on." There was no testimony introduced to contradict that of the Skaggs's.
At the close of the plaintiffs' case, the court granted a directed verdict on motion of both insurance companies on the coverage issue involving Sterling Skaggs. The court ruled that Sterling Skaggs was not an insured under either policy as he was not a resident of Gerald Skagg's household. Appellants assert this was error and maintain that Sterling Skaggs was a resident of his son's household and should therefore be covered under the State Farm policy as an insured.
Louisiana courts have had an opportunity to consider the term "household" and have concluded that this term embraces a collection of persons as a single group, with one head, living together, a unit of permanent and domestic character, under one roof; a collective body of persons living together with one curtilage, subsisting in common and directing their attention to a common object, the promotion of their mutual interests and social happiness. Leteff v. Maryland Casualty Company, 91 So.2d 123 (La.App. 1st Cir.1956); Buxton v. Allstate Insurance Company, 434 So.2d 605 (La. *970 App. 3d Cir.1983); Hernandez v. Comco Insurance Company, 357 So.2d 1368 (La. App. 4th Cir.1978), writ denied 359 So.2d 1305 (La.1978).
More recently, our Supreme Court in Bearden v. Rucker, 437 So.2d 1116 (La. 1983), in determining the "resident of the same household" question held that that question is not solely dependent upon whether a couple is living under the same roof. The emphasis is upon whether there remains, "membership in a group rather than an attachment to a building" and it is "a matter of intention and choice" rather than one of location. 437 So.2d at 1121.
The proper test for determining whether a directed verdict is appropriate in a jury case is whether the facts and inferences are so overwhelmingly in favor of the moving party that the court believes that reasonable men could not arrive at a contrary verdict. Miguez v. Urban Developments, Inc., 451 So.2d 614 (La.App. 5th Cir.1984); Schweiger v. Sanders, 449 So.2d 681 (La.App. 5th Cir.1984); Oppenheim v. Murray Henderson Undertaking Company, Inc., 414 So.2d 868 (La.App. 4th Cir. 1982).
It is not uncommon for parents to visit their children in their homes, and vice versa. Nor is it uncommon for children to help their parents in times of difficulty and distress. We do not believe that Mr. Sterling Skaggs's occasional visits to his son's home during his wife's hospitalization is sufficient for reasonable minds to differ as to whether Mr. Sterling Skaggs thereby became a resident of his son's household. There is more than sufficient evidence contained in the record that clearly shows Mr. Skaggs continued to reside at his home in Waggaman during this brief time and was never considered by any of the parties to be a resident of his son's home, nor was such ever his intention.
Appellants argue that the court should have allowed into evidence a rental insurance policy issued by State Farm Fire and Casualty Company on property owned by Gerald Skaggs in Waggaman, Louisiana. Whether the evidence is relative or not is within the discretion of the trial court and its ruling will not be disturbed absent a clear abuse of discretion. Citizens Bank & Trust v. Consolidated Terminal Warehouse, Inc., 460 So.2d 663 (La. App. 1st Cir.1984).
The policy in question was taken out June 2, 1982, almost one year after the accident and under no circumstances could it have any relevance to the issues presented by the pleadings. As the trial court correctly ruled in sustaining the defendants' objection to the introduction of such policy, "it is evident that coverage could not have been afforded to cover the accident before the court." We find no abuse in such ruling.
Lastly, appellants complain that the court erred by failing to charge the jury as to the law on intentional tort. However, we find no objection by counsel to the omissions, as required by LSA-C.C.P. Article 1793, which reads as follows:
"At the close of the evidence or at an earlier time during the trial as the court reasonably directs, a party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury.
"A party may not assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."
See also Ryals v. Home Insurance Company, 410 So.2d 827 (La.App. 3d Cir. 1982) rehearing denied March 23, 1982. As there was opportunity given by the trial court to object to the proposed charges, but none was forthcoming, we find no error.
Accordingly, for the above stated reasons, the judgment dismissing appellants' *971 claims is hereby affirmed. Appellants are to pay costs.
AFFIRMED.