823 So.2d 1048 (2002)
Yolanda D. HORTMAN and Collin Hortman, Plaintiff-Appellees
v.
STATE FARM MUTUAL INSURANCE COMPANY, Defendant-Appellee.
No. 36,179-CA.
Court of Appeal of Louisiana, Second Circuit.
August 14, 2002.
Rehearing Denied September 12, 2002.
*1049 Hicks, Hubley & Marcotte, by Craig O. Marcotte, Shreveport, for Appellant.
Sockrider, Bolin, Anglin Batte & Bowers, by James E. Bolin, Jr., Shreveport, for Appellee.
Before WILLIAMS, PEATROSS and DREW, JJ.
DREW, J.
Appellant State Farm Mutual Automobile Insurance Company (State Farm) seeks review of a partial final judgment on the question of uninsured motorist insurance coverage. For the following reasons, we affirm.

FACTS
On June 17, 2000, a Chrysler Sebring driven by Cindy Hortman collided with another vehicle on Bruce Street in Shreveport, Louisiana. Cindy Hortman's guest passenger, Yolanda Hortman, was injured in the accident. Yolanda Hortman is Cindy Hortman's stepmother.
At the time of the accident, Cindy Hortman owned two cars: the Chrysler Sebring involved in the accident and a 1996 Chevrolet Corvette. Both of these cars were covered by State Farm liability insurance policies providing $100,000 in liability coverage and $100,000 in uninsured motorist (UM) coverage. Cindy Hortman *1050 was the named insured on the Chrysler, but both Cindy and her father Collin were the named insureds on the Corvette; specifically, the declarations page lists "Hortman, Cindy & Collin" as named insureds. Cindy Hortman explained that her father purchased the Corvette for her but that she rarely used the car because it got poor gas mileage; instead, Collin Hortman drove the car approximately 80% of the time it was used.
Cindy Hortman and her two-year-old daughter live in a structure that Cindy described as a three-room apartment that is separate from but adjacent to her father's and stepmother's house at 1519 Shreveport Road in Minden. Cindy estimated that the apartment is about 10 feet from the exterior wall of the house, and one would walk about 50 feet when taking the shortest path from the apartment to the house. Collin Hortman described the apartment as the "servant's quarters." The apartment has a kitchen-living room combo, a bedroom and a bathroom. At her deposition, Cindy gave her address as "1519 Shreveport Road, Apartment A, Minden ..." Cindy lived under her father's roof until she was 18, and then she moved into the apartment, where she paid no rent. On June 14, 2000, three days before the accident at issue here, Cindy's father donated all of the immovable property at 1519 Shreveport Road, including his own house, to Cindy; the donation was recorded in the public records in November 2000. Photos of the house and apartment were submitted at Cindy Hortman's deposition. She stated that she owns all of the furnishings in her residence but that the utilities-water, electricity and cable-for her apartment were shared with the main house and that she does not pay for the utilities. The only telephone is in the main house, although Cindy said that she used her cellular telephone for her personal calls. Cindy said that there is only one mailbox for the house and the apartment and that only some of her mail was specifically addressed to "Apartment A." There is only one laundry facility and it is located in the main house. Cindy Hortman said that she had a key to the main house and could come and go in that house as she pleased, although only Cindy had a key to her apartment. Cindy said that she occasionally eats in the main house and that she cuts the yard for the entire property; Cindy's father was 70 years old at the time of this accident.
Yolanda Hortman sought recovery from State Farm under the liability provisions of the Chrysler policy and under the UM provisions of the Corvette policy. With regard to the latter policy, number 75484-D14-18A, Yolanda Hortman urges that she is an "insured" for purposes of UM coverage because she is the spouse of a named insured, Collin Hortman. State Farm has paid $100,000 to Yolanda Hortman from the liability insurance on the Chrysler but has refused Yolanda Hortman's demand for payment from the UM coverage on the Corvette.
The insurance policy covering the Corvette provides, in pertinent part:
We will pay nonpunitive damages for bodily injury an insured is legally entitled to collect from the owner or driver of an uninsured motor vehicle. The bodily injury must be caused by an accident arising out of the operation, maintenance or use of an uninsured motor vehicle.

Uninsured motor vehicle ... means:
1. a land motor vehicle, the ownership, maintenance or use of which is:
. . . . .
b. insured or bonded for bodily injury liability at the time of the accident; but

*1051 . . . . .
3. the limits of liability:
(a) are less than the amount of damages the insured is legally entitled to collect for bodily injury ...
. . . . .
An uninsured motor vehicle ... does not include a land motor vehicle:
1. insured under the liability coverage of this policy;
2. furnished for the regular use of you, your spouse or any relative;

. . . . .
Who is an Insured ...

Insuredmeans the person or persons covered by uninsured motor vehicle coverage.
This is:
1. the first person named in the declarations;
2. his or her spouse;

3. their relatives; ...
The policy defines "you or your," "spouse" and "relative":
We define some words to shorten the policy. This makes it easier to read and understand. Defined words are printed in boldface italics.

You can pick them out easily.
. . . . .
Relativemeans a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school.
. . . . .
Spousemeans your husband or wife while living with you.

. . . . .
You or Yourmeans the named insured or named insureds shown on the declarations page.
No copy of the insurance policy covering the Chrysler appears in this record.
State Farm and Collin and Yolanda Hortman filed opposing motions for summary judgment. State Farm's motion was concerned solely with the UM coverage issue; the Hortmans' motion addressed this issue and further asked that the court decide that Cindy Hortman was solely at fault for the accident. After considering the parties' arguments, the court rendered partial summary judgment deciding that Yolanda Hortman was an insured under the UM policy on the Corvette, but denied the Hortmans' motion to find Cindy Hortman entirely at fault for the accident. After the court certified the judgment as suitable for immediate appeal under La. C.C.P. art. 1915(B), State Farm took this appeal.

DISCUSSION
State Farm has raised two assignments of error:
1. The trial court committed manifest error in its determination that the 1997 Chrysler Sebring was by definition an "uninsured motor vehicle" under policy number 75484-D14-18A issued by State Farm
2. The trial court committed manifest error in its determination that Yolanda Hortman was an "insured" for purposes of uninsured motorist coverage under policy number 75484-D14-18A issued by State Farm.

Was the Chrysler Sebring an uninsured motor vehicle?
State Farm argues that the Chrysler could not be an uninsured motor vehicle as *1052 defined in the Corvette policy because the Chrysler was excluded from coverage under this policy provision:
An uninsured motor vehicle ... does not include a land motor vehicle:
. . . . .
2. furnished for the regular use of you, your spouse or any relative[.]
State Farm urges that because Cindy Hortman owned the Chrysler, it must be considered a vehicle "furnished for [her] regular use" and thus excluded from the policy definition of an uninsured motor vehicle.
In a different context, the fifth circuit rejected a similar argument by the insurer in Kirkland v. State Farm Mutual Auto Insurance Co., 95-462 (La.App. 5th Cir.10/31/95), 663 So.2d 872. In Kirkland, the plaintiff was injured while riding as a guest passenger in a truck owned by her husband as separate property and insured by State Farm. State Farm paid the plaintiff the limits of her husband's liability policy, but refused to pay under the plaintiff's UM coverage on her own separately owned vehicle that was insured by State Farm under a separate policy from her husband's truck. Part of the insurer's argument was that the husband's vehicle was furnished for his regular use and thus excluded from the definition of an uninsured motor vehicle under the plaintiffs UM policy. The appellate court rejected this argument, stating:
We find that this clause does not preclude recovery of UM benefits by Mrs. Kirkland. A vehicle "furnished for ... regular use" is not, by definition, the same thing, as a vehicle "owned" by the spouse.
The word "furnish," in Black's Law Dictionary, means "to supply, provide, or equip, for accomplishment of a particular purpose."
Thus, parents may "provide" an auto for their child, or a business may "provide" a vehicle for its employee. Likewise, in Black's dictionary, to "own" means "to have a good legal title; to hold as property; to have a legal or rightful title to; to have; to possess."
Therefore, we conclude that Mr. Kirkland "owned" his truck and Mrs. Kirkland "owned" her auto. Accordingly, we must disagree with astute counsel's interpretation of the policy in favor of State Farm.
There is no evidence in the record, nor may we assume, that either spouse "furnished" the other with their respective vehicles. Neither do we find any sound basis to conclude that an owner has his own vehicle "furnished" to him within the meaning of the policy. Therefore, we find it clear that the above quoted portion of the policy does not bar recovery by Mrs. Kirkland under the UM provisions as Mr. Kirkland's truck was not "furnished" for his use, but was in fact his separate personal property "owned" by him alone.
Id. at 875.
We agree with this rationale that a vehicle owned by a person cannot fairly be said to be "furnished" for that person's use. In some insurance policies, this exception is written to exclude vehicles "owned by or furnished for the regular use of" a person, but the State Farm policy at issue in this case does not exclude vehicles "owned by" a person. The term "furnished" means that some other person or entity is the owner of the vehicle and is permitting another to use the vehicle, and that is not the case here. Accordingly, the Chrysler is not excluded as an uninsured motor vehicle under the UM provision of the Corvette policy.

*1053 Is Yolanda Hortman an "Insured" under the Corvette Policy?

As noted above, the declarations page of the Corvette policy lists "Hortman, Cindy & Collin" as the named insureds. The policy provides that:
Insured means the person or persons covered by uninsured motor vehicle coverage.
This is:
1. the first person named in the declarations;
2. his or her spouse;

3. their relatives; ....
The policy further provides:
Relative-means a person related to you or your spouse by blood, marriage or adoption who lives with you. It includes your unmarried and unemancipated child away at school.
Yolanda Hortman argues that there is no "first person" named in the declarations because Cindy and Collin Hortman are listed together separated by an ampersand. We reject this argument, as we find no difficulty in separating the two insureds into the first named insured, Cindy, and the second named insured, Collin. Accordingly, the first person named in the declarations for this policy is Cindy Hortman. She is not married. We interpret the phrase "their relatives" to mean the relatives of the first person named in the declarations. Yolanda Hortman is related to Cindy Hortman by marriage (Yolanda is Cindy's stepmother), but whether Yolanda Hortman lived with Cindy Hortman at the time of the accident is a more difficult question. The policy at issue does not use the more jurisprudentially discussed terms such as "resident of the same household." Compare Hernandez v. Comco Insurance Company, 357 So.2d 1368 (La.App. 4th Cir.1978), writ denied, 359 So.2d 1305 (La.1978). Instead, the question is whether the insured's stepmother "lives with" the insured.
In Mobley v. State Farm Mutual Automobile Insurance Co., 28,357 (La.App.2d Cir.5/8/96), 674 So.2d 1117, writ denied, 96-1402 (La.9/20/96), 679 So.2d 433, this court interpreted the phrase "lives with you." In Mobley, the question was whether a 13 year old child whose parents had separated lived with her father or with her mother. After an exhaustive discussion of the rules governing the interpretation of insurance policies, this court concluded that the plain, ordinary and popular sense of this expression is not ambiguous and whether a person lives with another is a question of fact to be determined on a case-by-case basis according to the facts and circumstances of each particular case.
In this case, the insured owned the property where the stepmother resided but did not live under the same roof as her father and stepmother. Along with the difference in the policy language, this fact distinguishes this case from Hernandez, supra. Likewise, the utilities for both houses were shared as was the laundry facility, unlike Hernandez. The presence of a single landline telephone on the property is not persuasive, however, because Cindy Hortman said that she uses her cellular telephone as her principal telephone. Cindy said that she was responsible for the maintenance of all of the yard.
The Hernandez case and progeny were concerned with whether there was one single family unit (household) or multiple separate family units, but the definition of relative in this case is broader and encompasses those who "live with" the first named insured. We interpret the phrase "who lives with you" to be sufficiently broad to encompass those persons who live under a separate roof if the other circumstances indicate that the persons live *1054 together. In this case because Cindy Hortman owned the property where her stepmother lived, because the two residences shared essentially the same municipal address and because the utilities for the residences were also shared, we conclude that Yolanda Hortman "lives with" Cindy Hortman for purposes of the policy definition of an insured.

CONCLUSION
For the above reasons, we AFFIRM the judgment of the trial court. Costs of this appeal are assessed to State Farm.

APPLICATION FOR REHEARING
Before BROWN, C.J., WILLIAMS, CARAWAY, PEATROSS, and DREW, JJ.
Rehearing denied.